CASE No. 1015.

## FLENNIKEN v. SCRUGGS.

1. A being indebted to B by note, secured by a mortgage of a mare, dated April 24th, obtained the verbal permission of B to exchange with C the mare for a mule, provided A should give to B a lien on the mule. The exchange was made May 4th (the condition of the mortgage being then broken,) but C had no knowledge of the mortgage or of the verbal permission. This mortgage was recorded May 24th. A never gave the lien to B, and the mule died. *Held*, that B was not entitled to recover from C the possession of the mare.
2. The Circuit judge instructed the jury that if they believed the testimony they must find for defendant. There being no conflict of testimony, this instruction was free from error.

Before HUDSON, J., Fairfield, September, 1880.

This was an action commenced in June, 1880, by David R. Flenniken to recover from Clough H. Scruggs a bay mare, of

---

\* In the second edition of Spears, the title of this case is City Council of Charleston *v.* Kleinback.

the value of $150, and for $100, his damages. To the full statement made in the opinion of this court, it is deemed proper to add only the terms of the agreement of April 24th, signed and sealed by D. S. Carter, which was as follows:

" Received this 24th day of April, A. D. 1880, of D. R. Flenniken, permission to trade *one bay mare mule,* which he has a mortgage on, for one bay mare belonging to F. Elder. The claim on the mule to be transferred to the mare—the said described property to be delivered to the aforesaid D. R. Flenniken or order, whenever demanded. And I hereby agree and bind myself to keep the said property in my possession, subject to the order of said D. R. Flenniken, and pay the full value of same if lost, by death or otherwise.

" Witness my hand and seal the day and year above named."

Verdict for defendant. Plaintiff appealed.

*Mr. J. H. Rion,* for appellant.

After condition broken, the mortgagee of a chattel is not *absolute* owner until foreclosure or its equivalent, but he has a right to the actual possession and control of the property for the purpose of subjecting it to the satisfaction of the debt. Such is the modern doctrine. *Herm. on Chat. Mort.,* §§ 96, 194; *Rice's Eq.* 300; 1 *Strob. Eq.* 342; 2 *S. C.* 283. Carter could sell without plaintiff's permission; but he wanted to have the mortgage lien released. This plaintiff consented to do, only upon a condition which was not fulfilled. Defendant not knowing of this agreement, has not been prejudiced by it. And this agreement could not be carried out, because there was a mortgage to Elliott covering the mare. Unless plaintiff was absolute owner, Carter cannot be called plaintiff's agent.

*Mr. A. M. Mackey,* contra.

March 29th, 1881. The opinion of the court was delivered by

McIVER, A. J. The object of this action was to recover the possession of a certain bay mare found in the possession of the defendant. It seems that one Carter, being indebted to the

plaintiff in the sum of $700, on February 15th, 1878, gave his note to the plaintiff for the said amount, payable on November 1st, 1878, and, to secure the payment thereof, executed a mortgage to Flenniken upon various articles of personal property, amongst which was a certain mule. Carter, wishing to trade this mule, applied for and obtained permission from the plaintiff to do so, and on April 10th, 1880, traded the mule to one Elder for a mare, and on April 24th, 1880, he executed to the plaintiff an instrument in writing in the nature of a mortgage on the mare last mentioned, which instrument was recorded on May 24th, 1880. After the date of this instrument and before it was recorded, to wit, on May 4th, 1880, Carter again wishing to trade, swapped the mare to defendant for a mule, having previously applied for and obtained verbal permission from the plaintiff to do so, upon the condition that he "should give the plaintiff a lien on the mule received for the mare," which he never did. This mule died, but at what time is not stated in the "case," and the plaintiff finding defendant in possession of the mare in question, made a demand for her. Defendant at first agreed to give her up, but after taking legal advice he declined to do so, when this action was brought. It also appeared that the mule traded by defendant to Carter was under mortgage to one Elliott to indemnify him as endorser for defendant, but that when defendant found that the mare which he had obtained from Carter was claimed by the plaintiff, he gave Elliott additional security or indemnity. There was no evidence that defendant knew of the mortgage on the mare at the time he traded for her, or of the condition upon which Carter had obtained permission from plaintiff to make the trade.

The Circuit judge charged the jury, among other things: *First.* "That when there is a breach of the condition of a mortgage of personal property, the article mortgaged becomes the absolute property of the mortgagee, the possession of the mortgagor being thence merely permissive." *Second.* That if "the jury believe that the mare was transferred by Carter to Scruggs with Mr. Flenniken's permission, all Mr. Flenniken's right, title and interest in the mare became, upon the consummation of such trade, wholly gone, and he cannot now go upon this defend-

ant for the mare." *Third.* That the plaintiff "allowed Carter, as his agent, to make the trade, and if the agent made a bad trade, whether it arose from defect of title or any other cause, it was Mr. Flenniken's misfortune, and he alone must bear the loss." *Fourth.* That "the mare became released from any lien upon the exchange," made with defendant. *Fifth.* That as plaintiff "never had manual possession     *     *     *     Scruggs' legal rights remained unaffected by his promise made under a mistake." *Sixth.* That as there was no conflict of testimony in the case, "if the jury believe the testimony their verdict must be for the defendant." To these several points in the charge exceptions were duly taken as the foundation of this appeal.

Without undertaking to discuss the various exceptions, *seriatim,* we propose to consider and determine what we understand to be the real questions fairly arising upon the record. Whether it is true as an abstract proposition that the mortgagee of personal property becomes the *absolute* owner, in the strict sense of that term, after condition broken, may, doubtless, well be questioned, but there can be no doubt that, after condition broken, the mortgagee may seize and sell the mortgaged property in satisfaction of his debt, and there is as little doubt that, while a public sale is the proper mode, yet, with the consent of the mortgagor, he may sell at private sale, and if he can do this, he, certainly, may authorize the mortgagor himself to sell or otherwise dispose of the mortgaged property free from the lien of the mortgage. For these purposes the mortgagee, after condition broken, has all the rights of the absolute owner, and this is, manifestly, what the charge of the judge, properly construed, means. Here the undisputed testimony showed that Carter, the mortgagor, was authorized by the plaintiff, the mortgagee, to trade the animal in question, and when such trade was consummated it was unquestionably true, as the jury were instructed, that all the plaintiff's right, title and interest in the mare was gone, and, therefore, he could not recover in this action. The only persons who had any interest of any kind in the mare were Carter and Flenniken, and if Carter, by Flenniken's consent, traded the mare to the defendant, the rights of both Carter and Flenniken would pass to the defendant, and his right would thereby become indisputable.

It is said, however, that Flenniken's permission to Carter to

trade the mule was conditional, and that the condition was never complied with. To say nothing of the fact that Scruggs was ignorant of any such condition, it will be sufficient to say that the condition upon which the permission to trade was given was of such a character that it could not possibly be performed until after the trade was consummated. The condition was that Carter should give Flenniken a lien on the mule obtained in exchange for the mare, and this he certainly could not do until after the trade was made and the right to the property had passed. Surely the failure of Carter to comply with a private agreement made with Flenniken cannot have the effect of divesting the rights which Scruggs had previously acquired. Suppose, after the trade had been consummated, the mule had been accidentally killed while in the possession of Carter on his way home, before he had an opportunity of giving the lien to Flenniken, would it be said that the effect of this should be to divest Scruggs of his right to the mare which he had acquired by the exchange? Or, suppose that Flenniken had authorized Carter to sell the mare upon condition that he should apply the purchase money in a certain way, could it be said that it was the duty of the purchaser to see that the purchase money was properly applied? If, in the case supposed, Carter should, through fraud, fail to apply the purchase money as directed, whereby loss ensued, could it for a moment be said that such loss should fall upon the innocent purchaser, ignorant of any such private instruction to the agent, or would it not fall upon him who had put it in the power of Carter to commit such fraud. We are unable, therefore, to see how the first four exceptions can be sustained.

The fifth exception does not seem to be relied upon in appellant's argument here, and, manifestly, cannot be sustained.

The sixth exception has not been urged, and cannot be sustained. There being no conflict in the testimony, and the rights of the parties depending solely upon the application of principles of law applicable to the undisputed facts, there was, certainly, no error in saying to the jury that if they believed the testimony the verdict should be for the defendant.

The judgment of the Circuit Court is affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.